IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JOAN E. MULVANIA,<br>individually and for others similarly<br>situated,<br>        Plaintiff,<br><br>v.<br><br>SHERIFF OF ROCK ISLAND<br>COUNTY, ROCK ISLAND COUNTY,<br>JAMES BAILEY, MICHELLE HAUN,<br>JO LIVENGOOD, GERALD MARTIN,<br>TODD NESSELER, and<br>CHRISTOPHER RAY YOUNG,<br><br>        Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 4:10-cv-04080 |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

Now come Defendants, Rock Island County, Illinois, a body politic and corporate the Sheriff of

Rock Island County by and through Heidi J. Weller, Assistant State's Attorney and in support of

their Opposition to Plaintiff's Motion for Class Certification state as follows:

**I.      Plaintiff Has Not Met Her Burden of Demonstrating All Requirements**

The Plaintiff bears the burden of demonstrating that her case meets all of the

requirements of Federal Rule of Civil Procedure 23.  Miller v. Spring Valley Properties, 202

F.R.D. 244, 247 (C.D.Ill. 2001).  "Failure to meet any of the Rule's requirements precludes class

certification." Arreola v. Godinez, 546 F.3d 788, 794 (7th Cir. 2008). "Actual, not presumed,

conformance with Rule 23(a) remains . . . indispensable." General Telephone Company v.

Falcon, 457 U.S. 147, 160.  Further, "[t]he proposition that a district judge must accept all of the

complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and

has nothing to recommend it. . . . Before deciding whether to allow a case to proceed as a class

action, a judge should make whatever factual and legal inquiries are necessary under Rule 23."

Szabo v. Bridgeport Machines, 249 F.3d 672, 675-676 (7th Cir. 2001).  Defendants, Sheriff of

Rock Island County and Rock Island County, show below that the Plaintiff has not established all

of the requirements of class certification and that class certification should not be allowed in this

case.

## II.  The Official Policies

The Rock Island County Jail is the centralized booking facility for municipalities in Rock

Island County, Illinois.  The Sheriff requires that all those who will be placed with the jail

population in the blocks or who will be housed in the day rooms will wear the orange outer

clothing provided by the jail.  (Plaintiff's Exhibit 1, Boyd Dep. 18:4-6).  This type of policy has

been viewed with approval by the courts as a rule  proper to maintaining institutional security and

preserving internal order and discipline in a jail facility. Stanley v. Henson, et al., 377 F. 2d 961,

966 (7th Cir. 2003). There are categories of detainees that are excepted from this Rock Island

County jail rule.  For example, arrestees on bondable offenses who have the bond money may be

processed without changing into a jail uniform, as they will not be placed in the jail general

population.  (Plaintiff's Exhibit 1, Boyd Dep. 17:7-13).  Also, inmates on suicide watch are not

given the standard jail uniform.

The Sheriff authorizes reasonable force to be used to change the clothing of a detainee

who refuses to follow the jail policy of changing into jail clothing. (Plaintiff's Exhibit 1, Boyd

Dep., 21:24-22:5).  Plaintiff points to the case of Forrest v. Prine, 620 F. 3d 739 (7th Cir. 2010),

2

as an example of the use of a taser to implement the Sheriff's jail clothing policy.  However, the *Forrest* case was not a routine change out to jail garb.  Nevertheless, the *Forrest* court concluded that the Correctional Officer's "use of the taser was a **reasonable**, good faith effort to maintain or restore discipline within the jail."  Id at 747 (Emphasis added).

The general rule and practice at the jail is that detainees are allowed to change into the jail uniform by themselves in a closed room.  They are instructed to remove non-white underwear and underwire bras.  Further, the general practice among correctional officers is to not verify that the detainee has surrendered non-white underwear. (Defendants' Exhibits 1-A,  Daebelliehn Affidavit, paragraph 4; 1-B, Grchan Affidavit, paragraph 9; 1-C, Vroman Affidavit, paragraph 4). There are exceptions to this rule.  Correctional Officers may be present when detainees refuse to don the jail uniform when, for example,  a detainee has been placed on suicide watch or when there is a reasonable basis to believe that an arrestee may possess contraband.  (Defendants' Exhibits 1-D, Johnson Affidavit, paragraph 5; 1-E, Vieren affidavit, paragraph 7; 1-F, Bailey Affidavit, paragraph 7; 1-B Grchan Affidavit, paragraph 8).

On November 7, 2010, Plaintiff, Joan E. Mulvania, was arrested on probable cause for Domestic Battery by the City of  Rock Island, Illinois Police Department and taken to the Rock Island County Jail.  Katheryn Hurtte, Plaintiff's  roommate,  was also arrested for Domestic Battery at that time and taken to the Rock Island County Jail.  Prior to and upon arrival at the jail, Mulvania was resistant and combative.  In fact, correctional officers were needed to remove her from the police squad car and take her into the jail.  As she was refusing to walk and was physically resisting and struggling with correctional officers, Mulvania was taken to a holding cell near the booking area.  A female correctional officer, Michelle Haun, was in the holding cell

3

with her attempting to begin the booking process, including the change into a jail uniform. Mulvania struggled and fought with the female correctional officer. Other correctional officers were required to restrain Mulvania to prevent her from hurting Michelle Haun. It was necessary for several jail staff members to secure Mulvania, so that Ms. Haun could pat her down and remover her civilian clothing. Had she cooperated, Mulvania would have gone through the normal process, during which she would have changed into the jail uniform by herself, in a closed room and out of the view of anyone. (Defendants' Exhibits 1-G, Haun Affidavit, paragraphs 7-13; 1-F, Bailey Affidavit, paragraph 7).

Ms. Hurtte, the roommate of Ms. Mulvania who was arrested by the Rock Island Police Department at the same time as the Plaintiff, was also brought to the booking area of the Rock Island County jail shortly after Mulvania. In stark contrast to Mulvania, Hurtte was cooperative and followed the normal process. She was given an orange jump suit and told to change. She then took the clothing, entered a private room, changed into the jump suit, exited the private room and completed the booking process. (Defendants' Exhibit 1-G, Haun Affidavit, paragraphs 14-15).

Plaintiff presents this Court with two proposed classes for certification, a Section 1983 Strip-Search Class and a Section 1983 Dignity Class. In support of her proposed classes, the Plaintiff offers her own unsworn statements and nine sworn declarations from individuals seeking to be included in this litigation. The participation of these individuals was solicited in a letter sent out by the Plaintiff to 240 women who had been arrested by the Rock Island Police Department during the period of October 1, 2010 to April 30, 2011. The 240 women were chosen by the Plaintiff to receive the letter from a list of in excess of 3700 persons who had been

4

arrested by the Rock Island Police Department during the same period of time.  Apparently only 200 of the 240 women actually received the solicitation. (Plaintiff's memorandum, p. 9).

From the 200 letters sent through the United States mail, only nine of those who responded were selected for use in establishing the above-referenced proposed classes.  The Plaintiff presents their sworn declarations to establish that Defendant Rock Island County Sheriff's general policy to allow detainees to change privately into jail clothing is not being followed, and that a practice requiring detainees to routinely change in a manner exposing their genitals, buttocks, anus or unclothed breasts is being implemented by correctional officers. (Plaintiff's memorandum, p. 3). The Plaintiff has not challenged the Sheriff's policy requiring detainees to change into jail attire.  The dignity claim will be addressed separately.

Plaintiff states that Ms. Deirdre Bragg-Bomar was brought to the County Jail on December 29, 2010 and was required to change, removing her bra and underwear in front of a Correctional Officer with the door open allowing her naked body to be seen. (Plaintiff's Memorandum, pages 3-4). What Plaintiff fails to state is the Ms. Bragg-Bomar was arrested at Robert Young Mental Health Center, where she had indicated suicidal thoughts and was being disruptive.  Upon arrival at the Rock Island County Jail Officer Rickey Robinson of the Rock Island Police Department, the arresting officer, indicated to jail staff that Bragg-Bomar was suicidal. (Defendants' Exhibits1-H, Robinson Affidavit; 1-B, Grchan Affidavit, paragraphs 1-6).

Correctional Officer Aimee Grchan was on duty at the time Bragg-Bomar was brought to the jail.  Ms. Grchan does not remember Ms. Bragg-Bomar, but states that a Correctional Officer is required to treat a suicidal arrestee with a higher level of scrutiny and care.  For  Bragg-Bomar's protection, she would not have been allowed to change alone.  While Ms. Grchan does

5

not remember what color underwear Bragg-Bomar had on, she would not have been allowed to

keep any personal clothing items due to suicide concerns.  In any event, the door to the changing

room would not have been left opened.  (Defendants' Exhibit 1-B, Grchan Affidavit).

      Ms. Bobbie Ojeda-Freeman was brought to the County jail on December 5, 2010 after

being arrested pursuant to a warrant for petition to revoke her conditional discharge out of Lake

County, Illinois. (Grchan affidavit, paragraph 7).  Ms. Ojeda-Freeman states in her declaration

that a female correctional officer watched her change into her jump suit. (Plaintiff's

memorandum, Exhibit 2 at 2, par. 2) Correctional Officer Aimee Grchan was on duty in the

booking area when Ms. Ojeda-Freeman was brought to the county jail.  Correctional Officer

Grchan does not remember Ms. Ojeda-Freeman, but by her affidavit states that there would have

been no policy or practice reason to monitor Ms. Ojeda-Freeman's changing out into jail

clothing.  Therefore she would not have done so. (Defendants' Exhibit 1-B, Grchan Affidavit,

paragraphs 8-9).

      Ms. Devin  Lovelady-Morrison states in her declaration that she was brought to the jail on

March 5, 2011 and required to strip in front of a female correctional officer. (Plaintiff's

memorandum, exhibit 2 at 3, par. 2).  Correctional Officer Victoria Vroman was on duty at the

time Ms. Lovelady-Morrison was brought to the jail for booking.  She remembers Ms. Lovelady-

Morrison well because of the declarant's rather unique hair coloring.  Correctional Officer

Vroman would offer testimony that Ms. Morrison was given a jump suit, told to go into the

changing room and change into the jail uniform and further to remove all colored undergarments

and her bra if it had an underwire.  Correctional Officer  Vroman remembers that Ms. Morrison

changed a in private. Whether Ms. Morrison removed her undergarments is unknown to

6

Correctional Officer Vroman, as she did not check. The door to the changing room was closed during this process. (Defendants' Exhibit 1-C, Vroman Affidavit, paragraphs 1-4)

Plaintiff further states in her Memorandum of Law that Tonya Woods, Tara Hooks, Komanique Johnson, Chastity McClure (fka Chastity Donovan), Danielle McDore and Patricia Berry all were required to remove their underwear and exhibit their naked bodies to female guards. Citing to their sworn declarations, Plaintiff states that Chastity McClure and Patricia Berry undressed in the presence of male correctional officers. ( Plaintiff's Memorandum, pages 4-5).

There is a video surveillance system in the booking area at the jail. Cameras film the activities in the booking area 24 hours a day from two different angles. Unfortunately, the camera system is on a loop which causes the system to purge itself approximately every three months. Defendants were able to recover footage only back to April of 2011. The booking of Patricia Berry and Danielle McDore is, therefore, preserved on video. (Defendant's Exhibit 2, Hernandez Affidavit).

Ms. Berry's sworn declaration is total fabrication. The video from the booking area clearly shows that while in the booking area, Berry is given an orange jump suit. Berry then proceeds alone into the changing room. The door was closed behind her. The video then shows Berry leaving the changing room with her street clothes in hand, wearing a jail uniform. (Defendant's Exhibit 2(B), Berry video).

Ms. McDore's declaration leaves out the fact that she was very agitated and uncooperative when she arrived at the jail. McDore was escorted into a changing room by female correctional officers. She was given a jail uniform and told she must change. The female

7

correctional officers exit the changing room.  The door was closed behind them. (Defendants'

Exhibits 1-I, Barton Affidavit, paragraphs 1-6; 1-K, Clark affidavit, paragraphs 1-8).

At that point, according to the correctional officers, there was a loud disturbance in the

changing room.  Female correctional officers responded to the room and found McDore still in

her street clothes, screaming and rolling around on the floor.  McDore refused to change clothes,

and was told that she could change herself or the female correctional officers would change her.

McDore then changed into the jail uniform. (Defendants' Exhibits 1-J, Barton Affidavit,

paragraphs 7-12; 1-K, Clark affidavit, paragraphs 1-12).

Video shows McDore being escorted into the changing room and a female correctional

officer taking an orange uniform into the changing room.  The female correctional officers then

leave the room and shut the door.  The video then shows female correctional officers responding

to the dressing room disturbance.  The video contradicts Ms. McDore's statement that the door

was left open so that male correctional officers could view her while she disrobed.  ( Defendants'

Exhibit 2(A), McDore video).

The sworn declaration of Ms. Tara Hooks presents an impossibility.  Ms. Hooks was in

custody at the Rock Island County Jail for less than 15 minutes.  Hooks had been arrested for a

traffic violation, and a family member arrived at the jail with bond money to post for her almost

immediately.  Hooks was not required to change into a jail uniform because she was not going to

be housed in the main population.  In fact, Hook's mug shot, normally taken after an inmate has

changed into jail garb, shows Hooks in her street clothes.  Hooks then posted bond and was

released. (Defendants' Exhibits 1-C, Vroman Affidavit, paragraphs 5-8; 1-D, Johnson

Affidavit).

As for the remaining three declarant, Chasity Donovan, Tonya Woods and Komanique Johnson, the correctional officers who were on duty in the booking area do not have memory of their booking.  However, correctional officers who were on duty state in their affidavits, and would testify, that based on the reasons for the arrest of each of the three, none would have been required to have changed in front of a male or female correctional officer.  They further state that all would have been  allowed to change into the jail garb outside of the view of others. (Defendants' Exhibits 1-G, Haun Affidavit, paragraphs2-6; 1-A, Daebelliehn Affidavit, paragraph 4; 1-C, Vroman Affidavit, paragraph 9).

### III.    Application of Sheriff's Policies to Plaintiff

Plaintiff was arrested on November 7, 2010 for Domestic Violence against her roommate and taken to the Rock Island County Jail.  (Admitted Allegation of Paragraph 8 of the Second Amended Complaint.).  Plaintiff was wearing clothing.

As described in some detail above, plaintiff was resistant, uncooperative and combative. She was told that she could change into the jail uniform on her own, but she refused.  Had the Plaintiff cooperated and changed into the jail attire as required of all arrestees who are being placed in general population, she would have been allowed to do so without the necessity of male correctional officers assisting the female correctional officer.  (Defendants' Exhibits 1-F, Bailey Affidavit paragraphs 1-8; 1-G, Haun Affidavit, paragraphs 7-10).

Corrections staff did restrain the Plaintiff in order to change her clothing.  Each piece of clothing was carefully removed, and Plaintiff's body was immediately covered with a piece of the jail uniform as her clothing was removed.  The Plaintiff was not wearing underwear.  After Plaintiff's street attire was removed and she was covered with the jail suit, all correctional staff

9

exited the room.  Plaintiff immediately jumped up and threw the jail uniform to the ground

exposing her naked body.  (Defendants' Exhibits 1-G, Haun Affidavit, paragraphs 10-15; 1-F,

Bailey Affidavit, paragraphs 8-9).

### IV.    The Strip Search Class Does Not Satisfy Rule 23(a) and (b)(3)

Plaintiff must show that her proposed classes satisfy each of the requirements of Rule

23(a) and one of the subsections of Rule 23(b).  Arreola v. Godinez, 546 F.3d 788, 794 (7th Cir.

2008).  The plaintiff has not satisfied all of the requirements for her strip-search class.

### A.    Plaintiff Has Not Established Numerosity for Her Strip-Search Class

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members

is impractical.  While the Plaintiff need not prove the exact number, courts have noted that a

Plaintiff "must provide a good faith estimate of the number of members in the class."

Radmanovich v. Combined Insurance Company of America, 216 F.R.D 424, 431 (N.D.Ill. 2003);

see also, Brown v. Yellow Transportation, Inc., 08 C 5908, 2011 U.S.Dist. LEXIS 52345 at *11

(N.D.Ill. 2011).  A class size in excess 40 is generally sufficient to satisfy the rule. George v.

Kraft Foods Global, 270 F.R.D. 355, 365 (N.D.Ill. 2010).

In this case the Plaintiff has given the Court no credible evidence to establish that her

strip-search class exists at all, much less that the number would be too numerous for joinder.  In

fact, to the contrary, the dubious character of the sworn declarations presented to this Court by

the Plaintiff should raise concern and increase the level of scrutiny.  "Before deciding whether to

allow a case to proceed as a class action. . . . it is appropriate for the court to make whatever

factual and legal inquiries are necessary under Rule 23." Szabo v. Bridgeport Machines, 249 F.3d

672, 676.  (7th Cir. 2001).

Inquiry into facts necessary for determination of certification in this case show, that with the possible exception of Ms. Deidre Bragg-Bomar, who was on suicide watch, neither the Plaintiff nor any of her proposed class members were required to remove their clothing in a manner allowing the viewing of their private areas. The Plaintiff's clothes were removed because she was combative and would not change on her own. Ms. McDore was given jail clothing in a private changing room, but then refused to change into the required jail clothing. Tara Hooks never changed clothing at all and jail video shows Patricia Berry going into a private room to change and the door being closed behind her. In short, the declarants were not subjected to any practice requiring them to remove clothing in a manner that allowed others to view their genitals, buttocks, anus or unclothed breasts as alleged.

The Defendants do not know the content of Plaintiff's solicitation letter, nor the precise process that led to the production of the nine sworn declarations, but it is clear that the Plaintiff's evidence is not the good faith effort that is required to establish numerosity. Out of the 240 solicitation letters sent out to women believed to be potential members of a putative class, only nine were used in Plaintiff's mathematical formula she asserts establishes numerosity. (Plaintiff's memorandum, p. 9). As presented above, of these nine, 56 percent could never be part of a putative class of females who were required to move their clothing in a manner allowing the viewing of their private areas. This leaves four hand-picked by the Plaintiff out of 240 solicitation letters that have not yet been disproved or distinguished with direct evidence. This demonstrates a seriously flawed and unreliable approach in the collection of the data used by the Plaintiff to establish the numerosity of her strip-search class.

**B.      Plaintiff Has Not Established Commonality for Her Strip-Search Class**

11

In order to establish commonality the Plaintiff must show that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). Plaintiff claims that the common question of fact for her proposed class is whether there is a practice at the county jail requiring detainees to change into a jump suit in a room with the door open. (Plaintiff's Memorandum, p. 10). Plaintiff has attempted in her memorandum but has failed to present any credible evidence that such a practice exists. Plaintiff does not challenge the requirement that detainees change into jail uniforms.

Plaintiff presents a sterilized version of facts concerning her own case. Plaintiff states that she was taken into a room, and with both male and female correctional officers present, she was told to remove her clothes. (Plaintiff's Memorandum, p. 6). Defendants' version is materially different. Plaintiff presents nine "sworn" declarations from females stating that they had basically the same experience, i.e., they were taken to a room and required to strip with the door open in front of correctional officers. Three of the declarations are absolutely disproved, one is from a detainee who was on suicide watch and could not have been left alone while changing, and the remaining four declare that they were arbitrarily required to strip in front of either female correctional officers or both female and male correctional officers. None of these four allege that, like the Plaintiff, they were combative and refused to change. Only one of the declarants actually had an experience similar to the Plaintiff. Danielle McDore, like the Plaintiff, refused to change into jail clothing after being given a chance to change in private. It was, therefore, ultimately necessary for female correctional officers to enter the private changing room to insure that Ms. McDore changed into the jail uniform.

Neither in the Plaintiff's case nor in the cases of those whose sworn declarations have

12

been filed with this court is there any real evidence that anyone was required to remove their clothes allowing others to view their genitals, buttocks, anus or breasts. The declarants, with the exception of Tara Hooks, were simply required to change into the required jail uniform. If they did this willingly, and if they did not present some sort of special circumstance, e.g., suicide threats, they were allowed to change in private.

### C.    Plaintiff Has Failed to Establish Typicality for Her Strip-Search Class

Plaintiff cites to Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006) for her analysis of typicality: "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." Id. at 514. Plaintiff then attempts to establish typicality by simply pointing to the fact that she was required to exchange her clothing for a jail uniform. (Plaintiff's Memorandum, p. 11). Plaintiff does not assert that she was subjected to an arbitrary jail practice requiring that she change her clothes in a non-private setting, the very practice which is at the heart of her claim. This is more than a mere factual variation. Plaintiffs claim is not typical of the class she seeks to represent in this case.

### D.  Plaintiff Has Not Established that She Is Able to Adequately Represent the Strip-Search Class

The Court must make two inquiries in determining whether a plaintiff's representation of a class would be adequate: (1) adequacy of counsel and (2) whether the named plaintiff's representation in protecting the distinct interests of the class members is adequate. FED. R. CIV. P. 23(a)(4). As described above, Plaintiff Mulvania refused to change by herself. She is proposing that she can represent a class of women pre-trial detainees who are arbitrarily made to

13

change clothing in view of correctional officers.  The Plaintiff would not adequately protect the interests of the class she has defined.

## V.        Plaintiff's  Class Does Not Satisfy Rule 23(a) and (b)(3) for Her Dignity Class

Plaintiff must show that her proposed dignity class satisfies each of the requirements of Rule 23(a) and one of the subsections of Rule 23(b).  Arreola v. Godinez, 546 F.3d 788, 794 (7th Cir. 2008).  The plaintiff has not satisfied all of the requirements for her dignity class.

### A.        Plaintiff Has Failed to Establish Numerosity for Her Dignity Class

Looking solely at Plaintiff's motion for class certification and memorandum in support, Plaintiff has not established numerosity.  Her version of the facts found in her complaint and motion combined with the nine "sworn declarations" do not survive even the most modest scrutiny.  Plaintiff's flawed approach and unreliable data put forward to establish Plaintiff's motion do not rise to the level of the good faith estimate required for class certification.  Plaintiff has not established numerosity as required by Rule 23.

### B.        Plaintiff's Dignity Class Claim Does Not Rise to the Level of a Constitutional Violation

Beyond the Plaintiff's inability to establish numerosity with her unreliable data collection procedures, apparently the Plaintiff wants to litigate an issue that has already been addressed by at least one other court. *See e.g.*  Johnson v DeKalb County Sheriff, No. 1:10-CV-0357, 2010 U.S. Dist. LEXIS 131935 at *5 (N.D. Indiana 2010).  Assuming, *arguendo*, that Plaintiff's dignity class has been established, the practice complained of does not rise to the level of a violation of constitutional rights.  Even with pretrial detainees there is "'a *deminimus* level of imposition with which the constitution is not concerned." Id. at *5 (N.D. Indiana 2010) (*citing*

14

Ingraham v. Wright, 430 U.S. 651, 674) While "not wearing underwear may be unpleasant or even uncomfortable, it falls far short" of a constitutional violation.   "Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violation." Id.

### VI.    Conclusion

For the reasons discussed herein, Plaintiff's requests that this case be maintained as a class action for the following two classes should be denied.

The County of Rock Island Illinois, a body politic and corporate and the Sheriff of Rock Island County, Defendants,

By: /s/ Heidi J. Weller
        Illinois bar number: 6237449
        Assistant State's Attorney
        Attorney for Defendants Rock Island County
        and Sheriff of Rock Island County
        1504 - 3rd Avenue - 2nd Floor
        Rock Island IL 61201
        Telephone: (309) 558-3250
        Fax: (309) 786-4473
        Email: wellerh@co.rock-island.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I electronically filed the Memorandum in Opposition to Plaintiff's Motion for Class Certification with the Clerk of Court using CM/ECF system which will send notifications of such filing(s) to the party listed below.  Further, I certify that Exhibits 2(A) and (B) have been conventionally filed with the court and delivered via the U.S. Postal Service in Rock Island, IL to the following:

Kenneth N. Flaxman
Attorney for Plaintiff
200 S Michigan Ave, Ste 1240
Chicago, Illinois 60604
(312) 427-3200
knf@kenlaw.com

Respectfully submitted,

By: /s/ Heidi J. Weller
     Illinois bar number: 6237449
     Assistant State's Attorney
     Attorney for Defendants Rock Island
     County and Sheriff of Rock Island
     County
     1504 - 3rd Avenue - 2nd Floor
     Rock Island IL 61201
     Telephone: (309) 558-3250
     Fax: (309) 786-4473
     Email: wellerh@co.rock-island.il.us

EXHIBIT

1-A

## **AFFIDAVIT**

STATE OF ILLINOIS )
)
COUNTY OF ROCK ISLAND )

I, Jana Daebelliehn, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer for over 3 years.

2. That on February 6, 2011 I was working as a correctional officer on the second shift. I was assigned to the booking area of the Rock Island County Jail when Tonya Woods was brought in to the jail at approximately 6:15 pm.

3. That I can not recall anything specific about Ms. Woods. However, there is nothing about Ms. Woods' charges, which were traffic related, which would have indicated any reason for me to have been present in the dress-out room with her. Nor do I recall her being suicidal or uncooperative.

4. That my normal practice when dealing with cooperative female arrestees in custody on non-drug related charges is to give them a jail jump suit, show them to the dress-out room where they then change in private behind a closed door. Prior to entering the dress-out room I tell them that they may not have an underwire bra or colored undergarments. When the arrestee exits the dress-out room she then places her civilian clothing in an inmate property bag. I do not check to see if there is underwear in the bag. Nor do I check to see if the individual has kept her underwear. Inmates are on the "honor system" so to speak regarding wearing non-white undergarments. We will, however, confiscate nonwhite underwear if we find it out in the open in the jail blocks.

Date: 9-12-11

Subscribed and Sworn to before me this

12 day of Sept , 2011

Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

EXHIBIT

tabbies*

1-B

## AFFIDAVIT

STATE OF ILLINOIS            )
                             )
COUNTY OF ROCK ISLAND        )

I, Aimee Grchan, state the following under oath:

1. That I am a Correctional Officer employed by the County Of Rock Island, Illinois.  I have been employed as a correctional officer for over 5 years.

2. That I was working as a second shift correctional officer on December 29, 2010 when Deirdra Bragg-Bomar was brought into the Rock Island County Jail by the Rock Island Police Department following her arrest for Disorderly Conduct.

3. That  Ms. Bragg-Bomar was placed on suicide watch at the jail.  Inmates who are on suicide watch are not allowed to be by themselves in the dress-out room due to concerns that they might harm themselves if they are left alone without supervision.  Therefore, as the female correctional officer on duty in booking, I would have been present when she changed into jail clothing.

5. That normally an inmate charged with Disorderly Conduct would change alone in the dress-out room.  However, a female inmate on suicide watch would always be accompanied by a female correctional officer.  The change-out would still be done behind closed doors with only the female correctional officer present.

6. That I do not recall the color of Ms. Bragg-Bomar's underwear.  However, suicidal inmates are not allowed to keep underwear or bras of any kind.

7. That I was also the booking officer on duty when Bobbie Ojeda-Freeman came into the Rock Island County Jail on December 5, 2010 after being arrested on a warrant out of Lake County, Illinois for a petition to revoke.

8. That I can recall nothing specific about my interactions with Bobbie Ojeda-Freeman.  I do not recall being present while she changed.  There is nothing about her charge that would have indicated a reason to be present while she changed.  Nor do I recall her being uncooperative and there is nothing to indicate that she was suicidal.

9. That my normal procedure when dealing with a cooperative female in custody on non-drug related charges is to hand them their jail issued jumpsuit and shoes and then to show them to the dress-out room.  I then verbally tell them that they may only keep white undergarments and a wireless bra.  They then change in private, behind closed doors.  When they are done changing, I take their civilian clothing and put it in an inmate property bag.  I do not check to see if they have

retained their underwear.  I will, however, confiscate non-white underwear if I see it in the open on the blocks.

Date: 9 - 12 11

Subscribed and Sworn to before me this

12 day of Sept , 2011

Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

EXHIBIT

1-C

## AFFIDAVIT

STATE OF ILLINOIS            )
                             )
COUNTY OF ROCK ISLAND        )

I, Victoria Vroman, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer for over 4 years.

2. That I was the second-shift female correctional officer assigned to the booking area of the Rock Island Couny Jail on March 5, 2011 when Devin Lovelady-Morrison was brought into the jail following her arrest for Domestic Battery.

3. That I recall my interactions with Devin Loveldday-Morrison very specifically after seeing her mug shot. She stood out to me because she had a very unique and distinctive hairstyle, with the top front portion dyed bright.

4. That I was not in the dress-out room with Devin Lovelady-Morrison at any time. I gave her jail issued clothing and she changed by herself behind closed doors. As is my normal practice, I did tell her that she could not have an underwire bra or colored underwear in the jail. However, when she came out of the dress-out room and placed her clothing in a jail property bag I did not check to see if she had kept or removed her underwear.

5. That I was also the second-shift female correctional officer assigned to booking on March 29, 2011 when Tara Hooks was arrested.

6. That I also recall my interactions with Tara Hooks very specifically. She stood out to me because she was exceptionally nice and polite, which is unusual for inmates at the jail.

7. That I recall Tara Hooks was arrested on a traffic citation. Within several minutes of her arrival at the Rock Island County Jail a family member arrived to post her bond. Tara Hooks was in custody for a total of less than 15 minutes.

8. That because she had bond so quickly, Tara Hooks was never required to change into jail clothing. Her mug shot (attached hereto as Exhibit A) shows that she remained in civilian clothing through out the booking process. Normally inmates are photographed in their jail uniform.

9. That I was also the second-shift female correctional officer assigned to the booking area of the Rock Island County Jail on February 4, 2011 when Komanique Johnson was arrested for Domestic Battery and Tampering with a Police Animal. I have dealt with Komanique Johnson

on several occasions, but I do not recall my interactions with Komanique Johnson on February 4, 2011.  However, given her charges, there is no way a correctional officer would have been present while she changed.

Date: 9·12·11

Subscribed and Sworn to before me this

12 day of Sept , 2011

Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

R_Photo2

User: S6623

ROCK ISLAND COUNTY

HOOKS, TARA MARIE

09/09/11 10:34:50

Photo Date: 03/29/11 09:16:11 PM



HOOKS, TARA MARIEW F04/14/1983

Photo Date: 03/29/11 09:16:11 PM





EXHIBIT

A

tabbies

Vroman Affidavit

EXHIBIT

1-D

## **AFFIDAVIT**

STATE OF ILLINOIS          )
                           )
COUNTY OF ROCK ISLAND      )

I, Curtis Johnson, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer since 2003.

2. That I was working in the booking area of the Rock Island County Jail with Correctional Officer Victoria Vroman during the second shift on March 29, 2011 when Tara Hooks was brought into the jail.

3. That I recall Tara Hooks because she was very pleasant and talkative. I specifically recall that she told me that she was working on the Rock Island Arsenal.

4. That Tara Hooks was not required to change into a jail uniform at all on March 29, 2011. Second shift was not particularly busy that night, and since Ms. Hooks had her bond money quickly, she was never required to put on jail-issued clothing.

5. That in my experience as a correctional officer at the Rock Island County Jail, people arrested for non-drug related charges are allowed to change in private, behind closed doors, unless they refuse to change into a jail uniform, are thought to be suicidal, or there is a reasonable basis to believe they possess contraband.

Date: 9/9/11

Subscribed and Sworn to before me this

_____ day of Sept , 2011

_Shelly Chapman_
Notary Public

*"OFFICIAL SEAL"*
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

EXHIBIT

1-E

## AFFIDAVIT

STATE OF ILLINOIS        )
                                  )
COUNTY OF ROCK ISLAND    )

I, Patrick Vieren, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois.  That I have been employed as a Correctional Officer since 2002.

2. That I was working in the booking area of the Rock Island County Jail with Correctional Officer Jodi Barton on April 17, 2011 during the third shift.  I am male and Correctional Office Barton is female.

3. That I recall Patricia Berry coming into the jail following her arrest at approximately 2:00 a.m. on April 17, 2011.

4. That I recall Ms. Berry because she didn't want to make a phone call to try to have someone post bond for her. I also recall that she lived close to the jail.

5. That when it was time for Ms. Berry to change clothes, Correctional Officer Barton handed her a jail uniform and Ms. Berry went into the dress-out room by herself and changed clothes. The door to the dress-out room was closed while Ms. Berry changed.

6. That I have reviewed a video recording of Ms. Berry's Booking from the morning of April 17, 2011 and find the recording to accurately reflect what occurred.

7. That in my experience as a correctional officer at the Rock Island County Jail, arrestees brought in to the jail on non-drug related charges are allowed to change behind closed doors, in private, unless they refuse to change into the jail uniform, are thought to be suicidal, or there is a reasonable basis to believe they posses contraband.

Date: 9-9-11

Subscribed and Sworn to before me this

_____ day of _____, 2011

_____
Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

EXHIBIT

1-F

## AFFIDAVIT

STATE OF ILLINOIS      )
                                 )
COUNTY OF ROCK ISLAND  )

I, James Bailey, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. That I have been employed as a Correctional Officer for over 10 years.

2. That I have been assigned as a third shift correctional officer for at least the last 5 years.

3. That I was working in my capacity as a third shift correctional officer when Joan Mulvania was brought into the Rock Island County Jail following her arrest for Domestic Battery on November 7, 2010.

4. That I recall it being called out over the radio that the City of Rock Island was on the way in with a combative female. The combative female turned out to be Joan Mulvania.

5. That Joan Mulvania was extremely resistant and combative upon her arrival at the jail. She refused to exit the squad car and had to be physically removed from the car and assisted into the facility.

6. That Michelle Haun, a female correctional officer, was with Joan Mulvania when we placed her in a holding cell. Mulvania refused to stand up to be patted down. Michelle Haun, therefore, had to conduct the pat down with Mulvania on the floor. At that point, Mulvania began to kick her legs, thrash about on the floor, and repeatedly bang her head on the floor. Other correctional officers had to secure her to prevent her from harming Correctional Officer Haun or anyone else.

7. That in my experience as a correctional officer at the Rock Island County Jail, arrestees brought in to the jail on non-drug related charges are allowed to change behind closed doors, in private, unless they refuse to change into the jail uniform, are combative, suicidal or there is a reasonable basis to think they possess contraband.

8. That but for Mulvania being combative and resistant, she would have been allowed to change on her own in private.

9. That due to the extreme level of combativeness on the part of Ms. Mulvania, it was necessary for three correctional officers to hold her down while a female correctional officer removed her clothing. Correctional Officer Haun first removed her pants and then draped jail issued pants over Mulvania's lower body. She then did the same thing with Mulvania's shirt, again draping a

jail issued top over her upper body.  During that process, I did not see Mulvania's exposed body at any time.

Date: _____9/13/11_____

Subscribed and Sworn to before me this

___13___ day of ___Sept___, 2011

___Shelly Chapman___
Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

**EXHIBIT**

1-G

## AFFIDAVIT

STATE OF ILLINOIS            )
                             )
COUNTY OF ROCK ISLAND        )

I, Michelle Haun, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer since 2007.

2. That I was working in the booking area of the Rock Island County Jail during the third shift on February 2, 2011 when Chasity Donovan was brought into jail shortly after 1:30 a.m. I am female. The other Correctional Officer working with me in booking that night was Correctional Officer Shannon Kizer, a male.

3. That I recall Chasity Donovan specifically because she is learning disabled and stood out to me for that reason.

4. That there is nothing about Ms. Donovan's charges on February 2, 2011 that would have warranted being present in the dress-out room with her. If I had been present in the dress-out room due to any other reason, such as Ms. Donovan being combative, I would have documented that fact in a written report.

5. That neither Correctional Officer Kizer, nor any other male saw Ms. Donovan naked at any time while changing into her jail uniform on February 2, 2011.

6. That my normal practice for dressing out a cooperative female inmate not in custody on drug charges is to hand them a jail uniform, tell them take off their clothing and put on the jail uniform and to bring out their clothing when they are done. I show them the dressing room, direct them in and then I close the door after them, allowing them to change in private.

7. That I was also working as a correctional officer on third shift during the early morning hours of November 7, 2010 when Joan Mulvania was brought into the Rock Island County Jail following her arrest by the Rock Island Police Department for Domestic Battery.

8. That the City of Rock Island had called ahead indicating that Mulvania was en route and that she was combative. That I met the City of Rock Island squad car in the jail's sallyport. Mulvania was in the back seat of the squad and refused to exit. I, along with another correctional officer, had to lift and carry her out of the squad car and into the jail. Mulvania continued to be combative, yelling and cursing at us and failing to walk on her own.

9. That Mulvania was taken to a holding cell where I attempted to get her to calm down. I

indicated to Mulvania that if she could calm down that she could change on her own.  Mulvania continued to cuss and yell at me.  She also began to kick her legs and flail about on the floor.

10.  That at that time it was clear that she was not going to cooperate with the dress-out procedure.

11.  That while Mulvania was face-down on the floor of the holding cell, another correctional officer brought me a jail uniform.  That three other correctional officers secured Mulvania's limbs so that she could not strike me.  During the process, Mulvania continuously banged her head on the cell floor, attempted to kick her legs and cursed at corrections staff.

12.  That I removed Mulvania's bottoms and immediately placed jail issued pants over her lower body. Mulvania was not wearing any underwear.  I then removed her shirt and placed a jail issued top over her back.  I do not believe that during the dress-out process any male correctional officers viewed Mulvania's unclothed body.

13.  That the other correctional officers and I then quickly exited the cell.  Mulvania then immediately jumped up and began banging on the cell door.  She had not put on her jail uniform and was, therefore, naked while she continued to yell and scream and bang on the cell door.

14.  That after I was done with Mulvania, I then had to process Kathryn Hurtte, Mulvania's roommate who was arrested for the same domestic battery incident.

15.  That in contrast to Mulvania, Hurtte was calm and cooperative.  I provided Hurtte a jail issued uniform and I told her to change into the jail uniform in the dress-out room.  She took the uniform from me, entered the change-out room and changed by herself behind closed doors.  She then exited the room in jail garb.

Date: _9-14-11_                                     _Michelle Haug_

Subscribed and Sworn to before me this

_14_ day of _Sept_, 2011

_Shelly Chapman_
Notary Public

*OFFICIAL SEAL*
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

**EXHIBIT**

1-H

## AFFIDAVIT

STATE OF ILLINOIS )
)
COUNTY OF ROCK ISLAND )

I, Officer Rickey Robinson, states the following under oath:

1. That I am a sworn police officer employed by the City of Rock Island, Illinois.

2. That I was working in my official capacity as a police officer on December 29, 2010.

3. That at approximately 5:57 p.m. on December 29, 2010, I was dispatched to the Robert Young Mental Health Center located at 2701 17th Street, Rock Island, regarding a disturbance being caused at the facility by Deirdre Bragg-Bomar.

4. That when I arrived at the Robert Young Mental Health Center I was met by facility security guard Robert Schroeder. Mr. Schroeder advised me that Ms. Bragg-Bomar had threatened to harm herself and that she had been waiting for a mental health examination when she became agitated and combative.

5. That based on the information provided to me, I gave Mr. Schroeder prosecution instructions and I arrested Deirdre Bragg-Bomar for Disorderly Conduct. I then transported Ms. Bragg-Bomar to the Rock Island County Jail.

6. That when I arrived with Ms. Bragg-Bomar at the Rock Island County Jail, I informed jail personnel that she was suicidal so that she could be placed on suicide watch.

Date: 09-07-11

_Rickey Robinson_

Subscribed and Sworn to before me this

___ day of _Sept._, 2011

_Shelly Chapman_
Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

**EXHIBIT**

1-I

## AFFIDAVIT

STATE OF ILLINOIS      )
                          )
COUNTY OF ROCK ISLAND    )

I, Jodi Barton, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer for 3 years. I have been employed by the Rock Island County Sheriff's Department for over 5 years.

2. That I was working as a third-shift correctional officer on April10, 2010 and also on July 31, 2011.

3. That I was assigned to the booking area of the jail both nights.

4. That Danielle McDore was brought in to the jail approximately 12:30 am on July 31, 2011.

5. That I recall that Danielle McDore was very uncooperative when she arrived at the jail. Upon arrival at the jail, I asked Ms. McDore to "please come over here." McDore turned to the Rock Island Police Department officer who brought her in, cocked her head and said "who the fuck does she think she is," referring to me. McDore continued to curse at and threaten me through out the booking process. Eventually two more female correctional officers arrived to assist me with Ms. McDore. McDore indicated that she would talk to Correctional Officer Clark, but not to me. I then went to get Ms. McDore a jumpsuit.

6. That my intention was to allow Ms. McDore to change in private. That would have been my normal course of action. That initially, McDore was given a jail uniform and instructed by us to change. We left her in the change-out room by herself and closed the door.

7. That after a brief period of time we heard a commotion coming from the dress out room. We opened the door and found McDore on the floor kicking her legs and crying. She had not put on her jail jumpsuit.

8. The three of us then entered the dress-out room and told McDore that if she would not change clothes by herself, the three of us would need to assist her.

9. That McDore then did change her own clothing with the three of us still in the room.

10. That at no point was McDore told that a male correctional officer would change her.

11. That I do not recall anything about the color of McDore's underwear or whether or not she

removed her underwear during the change-out process.

12.  That I have reviewed a video of the incident with McDore and find it to be an accurate depiction of what transpired on April 10, 2011.

13.  That Patricia Berry was brought to the jail at approximately 2:00 a.m. on July 17, 2011.

14.  That I gave Patricia Berry a jail uniform and showed her to the change-out room where she changed behind closed doors and in private.  Neither I nor any other correctional officer was present in the change-out room when Ms. Berry changed.  That I waited for Ms. Berry to knock, as the change-out room does not open from the inside, and opened the door only after she indicated that she was done changing.

15.  That I have reviewed a video of the incident with Berry and find it to be an accurate depiction of what transpired on April 17, 2011.

Date: _9 . 12 . 11_                                    _Jodi Barton_

Subscribed and Sworn to before me this

__12__ day of _Sept_ , 2011

_Shelly Chapman_
Notary Public

OFFICIAL SEAL
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

EXHIBIT

1-J

## AFFIDAVIT

STATE OF ILLINOIS      )
                              )
COUNTY OF ROCK ISLAND   )

I, Kathy Clark, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been employed as a correctional officer 12 years.

2. That I was working as a third-shift correctional officer on April 10, 2010.

3. That Correctional Officer Jodi Barton was assigned to the booking area of the jail that night.

4. That Danielle McDore was brought in to the jail approximately 12:30 am.

5. That I recall that Danielle McDore was very uncooperative when she arrived at the jail. McDore immediately began to get smart and loud with Correctional Officer Barton in the booking room.

6. That I recall McDore saying that she was not going to put on a jail jumpsuit. I then tried to assist Correctional Officer Barton by speaking with McDore myself, hoping that I could calm her down. Correctional Officer Jo Livengood was also present to assist.

7. That all three of us; myself and Correctional Officers Barton and Livengood are female.

8. That initially, McDore was given a jail uniform and instructed by us to change. We left her in the change-out room by herself and closed the door.

9. That after a brief period of time we heard noises coming from the change-out room. We opened the door and found McDore rolling around on the floor still in her civilian clothes.

10. The three of us then entered the dress-out room and told McDore that if she would not change clothes by herself, the three of us would need to assist her.

11. That McDore then did change her own clothing with the three of us still in the room.

12. That at no point was McDore told that a male correctional officer would change her.

13. That I don't recall anything about Ms. McDore's underwear.

14. That I have reviewed a video tape of the incident with McDore and find it to be an accurate depiction of what transpired on April 10, 2010.

Date: _9.12.11_

_Kathleen a Clark_

Subscribed and Sworn to before me this

_12_ day of _Sept_ , 2011

_Shelly Chapman_

Notary Public

```
"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012
```

EXHIBIT

2

**AFFIDAVIT**

STATE OF ILLINOIS              )
                                         )
COUNTY OF ROCK ISLAND    )

I, Rick Hernandez, state the following under oath:

1.  That I am a Correctional Officer employed by the County of Rock Island, Illinois.  I currently hold the rank of Lieutenant.

2.  That one of my duties is as the custodian of video surveillance records from the video surveillance system at the Rock Island County Jail.

3.  That the video surveillance system at the Rock Island County Jail records over itself on approximately a three month loop unless I am asked to recover and preserve specific records.

4.  That in July, 2011, I was asked to recover video from the booking area of the Rock Island County Jail for various individuals arrested and brought to the jail between December 2010 and April of 2011.

5.  That I searched and found video for dates prior to April 2011 had been recorded over and were unretrievable.

6.  That I was able to recover video from the booking of Patricia Berry on April 17, 2011 and the booking of Danielle McDore on April 10, 2011.

7.  That I made copies of the video that was recorded during their booking process.  That the copies I made are true and accurate copies of the original video taken from our surveillance system and are attached hereto as Exhibits 2(A) and (B).

Date: 9-14-11                                        LT. Rick Hernandez

Subscribed and Sworn to before me this

14 day of Sept, 2011

Shelly Chapman
Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

Exhibits 2 (A) and (B) referenced in the foregoing Affidavit of Rick Hernandez consist of 2

compact discs labeled "CD-R Copy Danielle McDore Exhibit 2(A) Hernandez Affidavit" and

"CD-R Copy Patricia Berry Exhibit 2(B) Hernandez Affidavit" respectively which will be

conventionally filed with the District Court