IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JOAN E. MULVANIA, KELLY LEA ACUAHUTTL, CARISSA BAILEY, HOPE LEANNE GOLDSBERRY, KOMANIQUE SHURON JOHNSON, RENEE LYNN LUCAS, DANIELLE DENISE McDORE, DEVIN LOVELADY-MORRISON, BOBBIE OJEDA-FREEMAN, JENNIFER JILL SHELBY, AND TOYNA LUCILLE WOODS, individually and for others similarly situated | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 4:10-cv-04080  (Judge Sara L. Darrow) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SHERIFF OF ROCK ISLAND COUNTY, ROCK ISLAND COUNTY, JAMES BAILEY, MICHELLE HAUN, JO LIVENGOOD, GERALD MARTIN, TODD NESSELER, and CHRISTOPHER RAY YOUNG, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**

Now Come Defendants, the Sheriff of Rock Island County, and Rock Island County, Illinois, a body politic and corporate by and through Heidi J. Weller, Assistant State's Attorney, and in support of their Opposition to Plaintiffs' Amended Motion for Class Certification state as follows:

**I. Plaintiffs Have Not Met Their Burden of Establishing All Requirements For Class Certification.**

1

The Plaintiffs bears the burden of demonstrating that their case meets all of the requirements of Federal Rule of Civil Procedure 23. Miller v. Spring Valley Properties, 202 F.R.D. 244, 247 (C.D. IL 2001), *citing* Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976). "Failure to meet any of the Rule's requirements precludes class certification." Arreola v. Godinez, 546 F.3d 788, 794 (7th Cir. 2008). "[A]ctual, not presumed, conformance with Rule 23(a) remains...indispensable." General Telephone Company v. Falcon, 457 U.S. 147, 160 (1982)). Further, "[t]he proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it...Before deciding whether to allow a case to proceed as a class action, a judge should make whatever factual and legal inquiries are necessary under Rule 23." Szabo v. Bridgeport Machines, 249 F.3d 672, 675 (7th Cir. 2001). Defendants contend that Plaintiffs have not established all of the requirements of class certification and that class certification should therefore be denied in this case.

**A. Plaintiffs Do Not Establish Commonality Or Typicality For Their Proposed Class.**

In order to establish commonality, the Plaintiffs must show that there are questions of law or fact common to the class. Federal Rule of Civil Procedure 23(a)(2). Plaintiffs claim that the common question of fact is the application to each of the Plaintiffs of a Sheriff's Department policy which requires inmates to remove their non-white underwear. The Plaintiffs, it is argued, were each not permitted to retain underwear that was not white. Plaintiff does not challenge the requirement that detainees change into jail uniforms.

With respect to typicality, "[a] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members..." Oshana v. Coca-

Cola, 472 F.3d 506, 513 (7th Cir. 2006), *quoting* Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992). Again, Plaintiffs argue that the application of the all-white underwear policy to each of the Plaintiffs establishes typicality.

**Joan Mulvania**

It is important to remember that this action originated with Ms. Mulvania filing suit claiming excessive force, improper "strip-search" and various other constitutional violations as well as claims of hate crime and sexual battery alleged to have occurred upon her arrival at the Rock Island County Jail following her arrest by the Rock Island Police Department on November 7, 2010. In Plaintiff Mulvania's first three complaints, the issue of the Sheriff's all-white underwear policy is not mentioned at all. (*See* Documents #1, #2 and #16). The attempts to secure class certification in this matter have presented Defendants with a moving target, initially focusing on the proposed "strip-search" class.

Plaintiffs now allege in their Amended Motion for Class Certification that "[e]ach plaintiff was process into the Rock Island County Jail...while wearing non-white underwear," and that "each plaintiff was required to remove her non-white underwear." (*See* Document #47 at paragraphs 5 and 6). However, it is simply uncontroverted that Plaintiff Mulvania arrived at the Rock Island County Jail without underwear on. While Mulvania now characterizes the clothing item in question as an "undergarment" (*See* Plaintiff's Third Amended Complaint, Document #40 at paragraph 11) it is clear that Mulvania was not wearing underwear. Plaintiff herself, in her reply memorandum in support of her initial motion for class certification, stated that she had been wearing a "sleep pant thing," not underwear, and that she was required to remove "this undergarment because it was not white." (Document #38 at page 2). Plaintiff herself references the transcript of her interview with the Illinois State Police wherein she is questioned about what

she was wearing at the time of her arrest and states that she was wearing "shorts...or like those sleep pant things." She then goes on to describe how long the sleep pants were and that she was wearing them with a t-shirt. (*See* Plaintiff's Exhibit 3 at page 6, attached to Document #19; a copy of the relevant portion of the transcript is also attached hereto as Exhibit 1). Correctional Officer Michelle Haun, who conducted the dress-out of Ms. Mulvania, has confirmed that Mulvania was not wearing any underwear when she arrived at the Rock Island County Jail. (*See* Exhibit 2, affidavit of Michelle Haun, at paragraph 12).

**Komanique Johnson**

Plaintiffs further allege in their Third Amended Complaint that Ms. Komanique Johnson was told that she must remove her underwear unless it was all white and that she in fact "removed her colored underwear," (Plaintiff's Third Amended Complaint, Document #40 at paragraphs 36 and 37), and that failure to include a declaration from Ms. Johnson in their Memorandum in Support of Amended Motion for Class Certification was the result of a clerical error. (*See* Document #40 at footnote 3). However, Ms. Johnson's sworn declaration previously attached to Plaintiff's initial Memorandum in Support of Class Certification reveals that the allegations in the current complaint are simply not true. In that declaration, (attached to Document #19 as page 6 of Exhibit 2), Ms. Johnson denies that she had any underwear on at all when she arrived at the jail. According to Ms. Johnson's sworn declaration she was not wearing any underwear when she was arrested. (Exhibit 3 at paragraph 4).

While Plaintiffs argue that Ms. Johnson was arrested on various other dates and was made to remove her non-white underwear on "one or more of those dates" (*See* Document #48 at footnote 2) it is the February 4, 2011 date that Plaintiffs use in the Third Amended Complaint. Again, the Third Amended Complaint alleges that Ms. Johnson was arrested on February 4, 2011

4

and that on that date she was required to remove her non-white underwear. (*See* Document #40 at paragraphs 33-37). This allegation is simply untrue. Had Plaintiffs wished to allege that a constitutional violation occurred on a date or dates other than February 4, 2011, those dates would have been alleged in the Third Amended Complaint. Mentioning other dates in a footnote in a memorandum and claiming that she may have been made to remove non-white underwear on "one or more" of those dates is clearly insufficient to allow Defendants to provide any meaningful response. Again, Plaintiffs chose to utilize the February 4, 2011 date in their Third Amended Complaint. Defendants are unclear if, by way of footnote 2 in Document #48, counsel for Plaintiffs is attempting to seek leave to file a Fourth Amended Complaint. Unless and until that happens, Defendants are only in a position to respond to the allegations in the Third Amended Complaint.

**Hope Goldsberry**

Plaintiffs contend that Ms. Goldsberry was also required to remove her non-white underwear. However, this contention is controverted by Correctional Office Jodi Barton. According to a Rock Island County Jail Medical Screen completed upon Ms. Goldsberry's arrival at the Rock Island County Jail on March 7, 2011, Ms. Goldsberry was eight months pregnant. Correctional Officer Barton, the Correctional Officer who dealt with Ms. Goldsberry on March 7, 2011, has a personal policy of not requiring menstruating or pregnant inmates to remove their underwear at all, no matter what color. (*See* attached Exhibit 4, affidavit of Jodi Barton). A birth announcement posted in the local newspaper, the Dispatch-Argus, confirms that Hope Goldsberry gave birth on May 14, 2011. (*See* Exhibit 5).

As is the case with Ms. Mulvania and Ms. Johnson, Ms. Goldsberry was likewise not required to remove non-white underwear. That Correctional Officer Barton was acting based on

her own personal sensibilities and not according to official policy does not negate the fact that Ms. Goldsberry was simply not required to remove her underwear. Therefore she is not able to represent or be a part of a proposed class of women who were not permitted to wear their non-white underwear.

The proposed class must therefore fail on the issues of commonality and typicality. First, Plaintiff Mulvania, the initial plaintiff in this matter, arrived at the Rock Island County Jail without underwear. Likewise, Komanique Johnson also was not wearing underwear when she arrived at the Rock Island County Jail. Hope Goldsberry was wearing underwear, but she was allowed to keep it on. Each of these individuals presents factual scenarios quite different from that of the proposed class. Therefore, plaintiffs fail to establish the elements of commonality or typicality.

**B. Plaintiff Mulvania Has Not Established That She Is Able to Adequately Represent The Proposed Class.**

As stated above, this litigation began with various claims by Ms. Mulvania surrounding her arrest and processing into the Rock Island County Jail on November 7, 2010. Those claims, initially, had nothing to do with the Sheriff's white underwear policy whatsoever. Again, it is uncontroverted that Ms. Mulvania was not wearing underwear when she arrived at the jail. She herself indicates that she was wearing "sleep pants" and a t-shirt. The correctional officer who conducted the dress-out of Ms. Mulvania likewise indicates that she was not wearing underwear. Therefore, it defies logic to believe that Ms. Mulvania can adequately represent the proposed class when her focus has been, until quite recently, the litigation of her specific claims. As previously mentioned, Ms. Mulvania is not even a member of the class she proposes to represent. Therefore, it is inappropriate to attempt to establish this particular class using her lawsuit as the

basis.

### C. Plaintiffs Have Failed To Establish Numerosity.

Rule 23(a) requires that the proposed class be so numerous that joinder of all members is impractical. While Plaintiff need not prove an exact number, courts have noted that a Plaintiff "must provide a good faith estimate of members in the class." Radmanovich v. Combined Insurance Company of America, 216 F.R.D. 424, 431 (N.D. Ill 2003); *see also* Brown v. Yellow Transportation, Inc., 2011 U.S. Dist. LEXIS 52345 at *11 (N.D. Ill 2011). A class size in excess of 40 is generally sufficient to satisfy the Rule. George v. Kraft Foods Global, 270 F.R.D. 355, 365 (N.D. Ill 2010).

The participation of the proposed plaintiffs was solicited by way of a letter sent out to 240 women who had been arrested by the Rock Island Police Department between October 1, 2010 and April 30, 2011. According to Plaintiffs' Memorandum of Law in Support of Amended Motion for Class Certification, 40 of these letters were returned as undeliverable. While Defendants do not know the content of the letter, it presumably sought responses not only pertaining to this proposed class, but the former proposed "strip-search" class which is no longer being pursued. It is unknown how many responses dealt solely with the non-white underwear policy versus the now defunct "strip-search" class. It is interesting to note that while many of the currently named plaintiffs previously submitted sworn declarations to this Court indicating that they were required to change in front of correctional officers, and that when these correctional officers saw their underwear, they were told that they must remove them. (*See e.g.* Document #40, exhibits 2, 3 and 4). Now, however, they claim that they were told about the underwear policy prior to changing clothes.

In any event, utilizing Plaintiffs' mathematical calculations as described in their

Memorandum if Law in Support of the Amended Motion for Class Certification, they figure that there would be 41 class members in the 32 months between November, 2008 and July of 2011. (*See* Document #48 at page 10). However, removing 3 of Plaintiffs' proposed class members (Joan Mulvania, Komanique Johnson and Hope Goldsberry who are not, as argued above, members of the proposed class) changes the calculation substantially.

Further, Plaintiffs attempt to extrapolate additional class members by arguing that other municipalities besides the City of Rock Island should be taken into account is misguided. Plaintiffs present no evidence whatsoever regarding how many arrests these municipalities made during the relevant time period or how many of these arrests were female or how many were brought to the County Jail versus given notices to appear.

**II. Plaintiffs' Proposed Class Does Not Rise To The Level Of A Constitutional Violation.**

Beyond the Plaintiffs' inability to establish the requirements of Rule 23, Plaintiffs seek to litigate an issue that has already been addressed by at least one other court. *See* Johnson v. DeKalb County Sheriff, No 1:10-CV-0357, 2010 U.S. Dist LEXIS 131935 at *5 (N.D. Indiana 2010). Even assuming *arguendo* that Plaintiffs' class has been established, the practice complained of does not rise to the level of a violation of constitutional rights. Even in the case of pretrial detainees there is " a *deminimus* level of imposition with which the constitution is not concerned." Id. At *5, *citing* Ingraham v. Wright, 430 U.S. 651, 674 (1977). While "not wearing underwear may be unpleasant or even uncomfortable, it falls far short of a constitutional violation. Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violation." Id.

**III. Conclusion.**

8

For the reasons discussed herein, Plaintiffs' request that this case be maintained as a class action should be denied.

The Sheriff of Rock Island County, and Rock Island County, Illinois, a body politic and corporate, Defendants,

By: /s/ Heidi J. Weller
    Illinois bar number: 6237449
    Assistant State's Attorney
    Attorney for Defendants Rock Island County and Sheriff of Rock Island County
    1504 - 3rd Avenue - 2nd Floor
    Rock Island IL 61201
    Telephone: (309) 558-3202
    Fax: (309) 786-4473
    Email: wellerh@co.rock-island.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2012, I electronically filed: Memorandum in Support of Defendants' Response in Opposition to Plaintiffs' Amended Motion for Class Certification with the Clerk of Court using CM/ECF system which will send notifications of such filing(s) to the following:

| | |
|---|---|
| Kenneth N. Flaxman<br>200 S Michigan Ave, Ste 1240<br>Chicago, Illinois 60604<br>(312) 427-3200 | Jeffrey Martens<br>1630 5th Avenue<br>PO Box 659<br>Moline, IL 61266-0659<br>(309) 797-0850 |

Respectfully submitted,

By: /s/ Heidi J. Weller
    Illinois bar number: 6237449
    Assistant State's Attorney
    Attorney for Defendants Rock Island County and Sheriff of Rock Island County
    1504 - 3rd Avenue - 2nd Floor
    Rock Island IL 61201
    Telephone: (309) 558-3250

Fax: (309) 786-4473  
Email: wellerh@co.rock-island.il.us

#IL10AA10579
Audio/Video-Taped Interview/JOAN E. MULVANIA
11/08/10
S/A Dyan Morrisey #5365
Page No. 18

RT: Okay. Did you hit your head then?

JM: No.

RT: But you fell to the floor.

JM: Uh...

RT: Okay.

DM: Were you, were you dressed, or what do you sleep in?

JM: I had shorts and a, uh, or like those sleep pant things, you know.

DM: Okay.

JM: That...they go down to like here to my knees, and a t-shirt.

DM: Okay. Did she grab you by the clothes, or did she actually pull on like a leg or an arm?

JM: Think my...

DM: Remember?

JM: ...clothes.

DM: She just pulled you...

JM: I was like half asleep.

DM: Okay. Did she hit you with anything while you were in the bedroom?

JM: No.

DM: She just throwing stuff around, or...

JM: Yeah. She threw my lamp that a friend made me. And then she broke my T.V., I think.

DM: Okay. And all that stuff's in your bedroom? Okay. And then the, the police came. What did you tell the police? Did you talk to them at all?

JM: Yeah, I tried. And then just like both of you are fightin', both of you are goin'. I should've never called 'em. I should've just called her dad. Cause her dad knows how



EXHIBIT 1



## AFFIDAVIT

STATE OF ILLINOIS         )
                          )
COUNTY OF ROCK ISLAND     )

I, Michelle Haun, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. I have been a correctional officer since 2007.

2. That I was working in the booking area of the Rock Island County Jail during the third shift on February 2, 2011 when Chasity Donovan was brought into jail shortly after 1:30 a.m. I am female. The other Correctional Officer working with me in booking that night was Correctional Officer Shannon Kizer, a male.

3. That I recall Chasity Donovan specifically because she is learning disabled and stood out to me for that reason.

4. That there is nothing about Ms. Donovan's charges on February 2, 2011 that would have warranted being present in the dress-out room with her. If I had been present in the dress-out room due to any other reason, such as Ms. Donovan being combative, I would have documented that fact in a written report.

5. That neither Correctional Officer Kizer, nor any other male saw Ms. Donovan naked at any time while changing into her jail uniform on February 2, 2011.

6. That my normal practice for dressing out a cooperative female inmate not in custody on drug charges is to hand them a jail uniform, tell them take off their clothing and put on the jail uniform and to bring out their clothing when they are done. I show them the dressing room, direct them in and then I close the door after them, allowing them to change in private.

7. That I was also working as a correctional officer on third shift during the early morning hours of November 7, 2010 when Joan Mulvania was brought into the Rock Island County Jail following her arrest by the Rock Island Police Department for Domestic Battery.

8. That the City of Rock Island had called ahead indicating that Mulvania was en route and that she was combative. That I met the City of Rock Island squad car in the jail's sallyport. Mulvania was in the back seat of the squad and refused to exit. I, along with another correctional officer, had to lift and carry her out of the squad car and into the jail. Mulvania continued to be combative, yelling and cursing at us and failing to walk on her own.

9. That Mulvania was taken to a holding cell where I attempted to get her to calm down. I



EXHIBIT 2



indicated to Mulvania that if she could calm down that she could change on her own. Mulvania continued to cuss and yell at me. She also began to kick her legs and flail about on the floor.

10. That at that time it was clear that she was not going to cooperate with the dress-out procedure.

11. That while Mulvania was face-down on the floor of the holding cell, another correctional office brought me a jail uniform. That three other correctional officers secured Mulvania's limbs so that she could not strike me. During the process, Mulvania continuously banged her head on the cell floor.

12. That I then removed Mulvania's bottoms and immediately placed jail issued pants over her buttocks. Mulvania was not wearing any underwear. I then removed her shirt and placed a jail issued top over her back. I do not believe that during the dress-out process any male correctional officers viewed Mulvania's unclothed body.

13. That the other correctional officers and I then quickly exited the cell. Mulvania then immediately jumped up and began banging on the cell door. She had not put on her jail uniform and was, therefore, naked while she continued to yell and scream and bang on the cell door.

Date: 9-13-11                                   /s/ Michelle Haun

Subscribed and Sworn to before me this

13 day of Sept, 2011

/s/ Shelly Chapman
Notary Public

"OFFICIAL SEAL"
SHELLY CHAPMAN
Notary Public, State of Illinois
My Commission Expires 5/14/2012

## Sworn Declaration of Komanique Shuron Johnson

The undersigned, under penalties of perjury as provided by law, certifies that the following statements are true:

1. My name is Komanique Shuron Johnson.

2. I was arrested by the Rock Island Police Department on an alleged domestic battery on February 4, 2011 and brought to the Rock Island County Jail.

3. At the Jail, before my first court appearance, I was required to change into a jumpsuit.

4. A female jail guard watched me change into the jumpsuit. I was not wearing any underwear when I was arrested and my naked body was exposed to the female officer. I was upset, embarrassed, and humiliated by this treatment.

Further I state not.

Dated: June 23, 2011

/s/ Komanique Shuron Johnson
Komanique Shuron Johnson

Plaintiff's Exhibit 2

EXHIBIT 3

Page 6

# AFFIDAVIT

STATE OF ILLINOIS            )
                             )
COUNTY OF ROCK ISLAND        )

I, Jodi Barton, state the following under oath:

1. That I am a Correctional Officer employed by the County of Rock Island, Illinois. That I have been employed as a Correctional Officer for over four years.

2. That I was working in my capacity as a correctional officer on March, 7, 2011 when Hope Goldsberry was processed into the Rock Island County Jail. I was the female correctional officer assigned as the search officer for Ms. Goldsberry which means I would have been responsible for the dress-out of Ms. Goldsberry.

3. That when completing the Rock Island County Jail Medical Screen History Report, a series of medical questions asked of each individual who comes into the Rock Island County Jail, Hope Goldsberry indicated that she was eight months pregnant. A copy of that medical screen is attached as Exhibit A.

4. That despite the policy of the Rock Island County Sheriff's Department, I personally allow any pregnant or menstruating inmate to keep their underwear, no matter what color it is.

5. That therefore, Ms. Goldsberry would not have been told that she needed to remove non-white underwear.

Date: 6-15-12                             /s/ Jodi Barton

Subscribed and Sworn to before me this
15th day of June, 2011

/s/ Cassie E. Sullivan
    Notary Public

OFFICIAL SEAL
CASSIE E. SULLIVAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-17-2015



EXHIBIT 4

## Jail Medical Screen History Report

**Inmate:** GOLDSBERRY, HOPE LEANNE    **Race:** W   **Sex:** F   **DOB:** ▇   **SSN:** ▇

**Booking #:** 124856    **Booking Officer:** BOWLING, ROBERT J    **Date/Time:** 03/07/2011 13:50:00

**Screening Officer:** _____    **Date:** 03/07/2011 14:01:13

**Reviewed By (Nurse):** _____    **Date:** _____

| Q. # | Question | Answer | Notes |
|---|---|---|---|
| 1 | Have you ever been arrested before? If so, in what States? | Y | ill |
| 2 | Are you Currently on probation or parole in any of these states? If so, which ones? Do you have any known criminal history? If yes what jurisdiction? | N | |
| 3 | Have you been convicted of any crimes in the past year? | N | |
| 4 | Are you a convicted sex offender? | N | |
| 5 | Are you currently or have you ever associated with any gangs? If so, which one? | N | |
| 6 | Is there any valid reason that would prevent you from being placed into General Population? If so, what is the reason. | N | |
| 7 | Is this inmate being housed for another Agency? (Personal Observation) | N | |
| 8 | Is there any anybody in this facility that you are enemies with? If so, who? | N | |
| 9 | Have you been in a hospital in the last 48 hours? If so, where and what for? | N | |
| 10 | Do you have any staples or stitches? If so, where? | N | |
| 11 | Are there any visable injuries noted by the officer? | N | |
| 12 | Do you have a regular Physician? If so, what is his name and when did you last see him? | Y | dr. gerkie last seen jan 2011 |
| 13 | Are you allergic to anything? If yes, what? | N | |
| 14 | Do you currently take any medications? If so, What medications and when did you last take them? | Y | for ulcers |
| 15 | Any recent injuries? If so what injury and when did it happen? | N | |
| 16 | Have you consumed alcohol or other intoxicating substances in the past 24 hours? If so, what substance and when did you take it? | N | |
| 17 | Do you drink alcohol or beer on a daily basis? If so, have you ever had a seizure when withdrawing? | N | |
| 18 | Have you ever had any type of heart problems? If so, what type and when? | N | |
| 19 | Do you have high blood pressure? | N | |
| 20 | Do you have Asthma or any other chronic breathing problems? If so, do you use a prescription inhaler? | N | |
| 21 | Do you have Diabetes? If so, do you use insulin or pills? | N | |



EXHIBIT 4A

*jscr*                 Page 1

| | | | | | |
|---|---|---|---|---|---|
| **Inmate:** GOLDSBERRY, HOPE LEANNE | | **Race:** W | **Sex:** F | **DOB:** ██/██/████ | **SSN:** ████████ |
| **Booking #:** 124856 | **Booking Officer:** BOWLING, ROBERT J | | | **Date/Time:** 03/07/2011 13:50:00 | |
| **Screening Officer:** _____ | | | **Date:** 03/07/2011 14:01:13 | | |
| **Reviewed By (Nurse):** _____ | | | **Date:** _____ | | |

| Q. # | Question | Answer | Notes |
|---|---|---|---|
| 22 | Have you ever had a seizure? If so, when was the last one? | N | |
| 23 | Have you ever had a stroke? If so, when? | N | |
| 24 | Have you ever had stomach trouble or digestive problems? If so, what were they and when did you last have problems? | N | |
| 25 | Are you pregnant? If so, how far along? | Y | 8 mts she says |
| 26 | Do you have other medical problems that the medical staff needs to be aware of? If so. what? | N | |
| 27 | Do you have health insurance or a medical card? If insurance what company? | N | |
| 28 | Have you ever thought that life was not worth living or that you wanted to die? | N | |
| 29 | Have you ever acted on these thoughts? | N | |
| 30 | Is there anything that could occur that would make you not want to go on living | N | |
| 31 | Do you currently have thoughts of hopelessness or worthlessness? | N | |
| 32 | Do you ever hear voices or see things that others don't hear or see? | N | |
| 33 | If you hear voices, do they command you to do things? | N | |
| 34 | Do you have problems with taking care of daily activities? | N | |
| 35 | Have you ever had thoughts about wanting to harm others? | N | |
| 36 | Have you ever acted on those thoughts? | N | |
| 37 | Are you a U.S. Military Vereran? | N | |

(Confinement Code: COMP)

**Total 'YES' Answers:** 4     **Total 'NO' Answers:** 33     **Total 'REFUSE' Answers:** 0

_____      X _____
*Signature of Classification Officer*     *Signature of Inmate*



Posted Online: May 19, 2011, 5:10 pm

# Birth list for Friday, May 20, 2011

Comment on this story

**Genesis BirthCenter, Davenport**

**Bunch,** Ashly, and **Long,** Kyle, Buffalo; girl, Monday, May 16.

**Butler,** Jessica, and **Singleton,** Charles, Davenport; girl, Saturday, May 14.

**Cordell,** Kathryn and Michael Jr., Bettendorf; girl, Monday, May 16.

**Dixon,** Ashanti, Rock Island; boy, Tuesday, May 17.

**Elvidge,** Alecia and Justin, Davenport; boy, Wednesday, May 18.

**Folland,** Megan and Dustin, Eldridge; girl, Monday, May 16.

**Paxton,** Sarah and Kevin, Davenport; boy Saturday, May 14.

**Richie,** Ashley, Davenport; boy, Tuesday, May 17.

**Rima,** Molly and Jason, Bettendorf; boy, Monday, May 16.

**Sanchez-Johnson,** Amanda and **Johnson,** William, East Moline; girl, Tuesday, May 17.

**Sebring,** Crystal and Derick, Davenport; girl, Monday, May 16.

**Steurrys,** Christie, Davenport; girl, Monday, May 16.

**Stoakes,** Carly, and **Cook,** Jeremy, Davenport; boy, Monday, May 16.

**Trefry,** Rochelle and Chris, Milan; girl, Tuesday, May 17.

**Wozniak,** Holly and Jeremy, Davenport; girl, Sunday, May 15.

**Genesis BirthCenter Illini, Silvis**

**Crampton,** Amanda, and **Ortiz,** David, East Moline; girl, Friday, May 13.

**Davis,** Brooke, Cleveland; girl, Sunday, May 15.

 **Goldsberry,** Hope, and **Jinez,** Juan, Rock Island; girl, Saturday, May 14.

