UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOAN E. MULVANIA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:10-cv-4080-SLD-JAG |
| ) | |
| SHERIFF OF ROCK ISLAND COUNTY, et al., ) ) | |
| ) | |
| Defendants. ) | |

ORDER

Plaintiff Joan Mulvania ("Mulvania") filed her initial Complaint in this Court alleging various constitutional violations by Rock Island County, the City of Rock Island, and the Sheriff of Rock Island. Since the initial filing Mulvania has amended her Complaint three times and moved for the certification of a class action pursuant to Federal Rule of Civil Procedure 23.

Presently before the Court are Mulvania's original and Plaintiffs' Amended Motion for Class Certification. (ECF No. 19, 47.) For the reasons set forth below, the Court DENIES the motions.

I.  **BACKGROUND**

   **A. Mulvania's Claims**

On November 15, 2010, Mulvania filed her initial Complaint against Rock Island County, the City of Rock Island, and the Sheriff of Rock Island. (ECF No. 1.) Mulvania alleged that at approximately 4:00 a.m. on November 6, 2010, two Rock Island police officers were dispatched to her home and arrested her in accordance with the Rock Island Police Department's policy for responding to allegations of domestic violence. (Compl. ¶¶ 6-9.) Mulvania alleged that after arriving at the jail she was physically and sexually assaulted by four correctional

1

officers who used "excessive and unreasonable force" against her. (Compl. ¶¶ 13-15.) She further alleged that the assault induced a seizure that required her to be hospitalized. (Compl. ¶¶ 16-20.) Mulvania contends that the hospital examination corroborates her assault allegations. (Compl. ¶ 18.)

On November 8, 2010, a judge informed Mulvania that she was not going to be prosecuted for domestic violence. (Compl. ¶ 23.) Mulvania alleges that the Defendants wrongfully kept her in custody for several hours after she was informed that there would be no prosecution. (Compl. ¶ 24.)

### B. The Pleadings

In her initial Complaint, Mulvania raised six distinct claims against the Defendants, including allegations of a hate crime and violations of her Fourth and Fourteenth Amendment rights. (Compl. ¶¶ 25-30.) Mulvania was the only named Plaintiff in the Complaint, but indicated her desire to pursue the action individually and for all persons who were "in the custody of the Sheriff of Rock Island without a judicial determination of probable cause to detain and who were a) subjected to a strip search by employees of the Sheriff, and/or b) held for more than 48 hours without a judicial determination of probable cause." (Compl. ¶ 2.) This was her first attempt to convert her claims into a class action. Specifically, Claim II asserted that Mulvania was held for over 48 hour hours without a judicial determination of probable cause, that over 100 detainees suffered similar treatment, and that she sought to maintain this claim on behalf of a class pursuant to Rule 23(b)(3). (Compl. ¶ 26.) Similarly, Claim III asserts that Mulvania was subjected to a strip search in violation of her constitutional rights and that more than 100 people were subjected to such treatment, constituting another potential class action. (Compl. ¶ 27.)

On November 19, 2010, Mulvania filed an Amended Complaint against the same Defendants, this time asserting five claims. (Am. Compl. ¶ 2, ECF No. 2.) The factual allegations resembled those in the initial Complaint, but Mulvania modified her proposed class action by dropping her unlawful detention claim and, accordingly, also dropping her original desire to prosecute that claim as a class action. She did, however, maintain her claim that the strip search was unconstitutional and that she sought to bring the claim as a class action on behalf of herself and all persons who were taken into custody by the police and submitted to a strip search prior to a judicial determination of probable cause. (Am. Compl. ¶ 2.)

On July 5, 2011, Mulvania filed a Second Amended Complaint, again altering her claims and intention to pursue them as class actions. (Sec. Am. Compl., ECF No. 32.) Mulvania also altered the Defendants named to her suit, dropping the City of Rock Island as a Defendant but adding claims against five correctional officers. (Sec. Am. ¶ 5.) This time, Mulvania asserted two strip-search claims, one based on the due process protections of the Constitution and one based on Illinois state law, alleging that it was improper for the Defendants to perform strip-searches without probable cause. Although she remained the only named Plaintiff, Mulvania still sought to bring her claims on behalf of "all women" who were "in custody of the Sheriff of Rock Island and, without an individualized determination that there was a reasonable basis to believe that the arrestee was concealing contraband or weapons, were subjected to a visual inspection of their genitals, buttocks, anus, or unclothed breasts" before a judicial determination that there was sufficient probable cause to detain them. (Sec. Am. Compl. ¶¶ 2, 17, 21.)

Pursuant to the July 5, 2011, text order of Magistrate Judge Gorman, the Court set July 22, 2011 as the deadline for Mulvania to file a motion for class certification under the Second

Amended Complaint. Mulvania filed her Motion for Class Certification on the deadline. (Mot. for Class Certification, ECF No. 18.) This Motion included two proposed classes: a "Section 1983 strip-search class" and a "Section 1983 dignity class." (*Id.*) However, in her reply brief, Mulvania conceded that certification of the strip-search class would be inappropriate and withdrew that request. (*See* Reply Mem. of Law in Supp. of Mot. for Class Certification 1, ECF No. 38.) Mulvania did, however, maintain her desire to pursue certification of the "Section 1983 dignity class," which she defined as "[a]ny woman who, from November 15, 2008 to the date of entry of judgment, entered the Rock Island County Jail and, because she was not wearing pure white underwear, was required to remove her undergarments and wear a jumpsuit without underwear." (Mot. for Class Certification 1-2.)

On October 25, 2011, over three months after the deadline for filing a motion for class certification, Mulvania filed a motion seeking leave to file a third amended complaint that added 10 additional named plaintiffs to the case. (Mot. for Leave to File Third Am. Compl., ECF No. 39.) According to Mulvania, the additional plaintiffs of the proposed Third Amended Complaint were named because they were members of her proposed class and could serve as additional class representatives.[1] (*Id.* at 1.)

On April 23, 2012, the Court held a hearing and status conference on Mulvania's class certification motion and motion for leave to file the Third Amended Complaint. During the hearing, the Court granted Mulvania's request to file the Third Amended Complaint and granted Mulvania the opportunity to file an Amended Motion for Class Certification. Mulvania's Third Amended Complaint was filed on April 24, 2012. (Third Am. Compl., ECF No. 40.) Claim I of

---

[1] In the Third Amended Complaint, Mulvania has been joined by Kelly Lea Acuahuttl, Carissa Bailey, Hope Leanne Goldsboro, Komanique Shuron Johnson, Renee Lucas, Danielle Denise McDoer, Devin Lovelady-Morrison, Bobbie Ojeda-Freeman, Jennifer Jill Shelby, and Tonya Lucille Woods as additional co-plaintiffs. (Third Am. Compl. ¶ 2.)

4

the Third Amended Complaint involves each of the Plaintiffs' individual allegations with respect to the underwear policy, whereas the other five claims (Claims II-VI) are asserted only by Mulvania as they concern her specific allegations of physical and sexual assault. (Third Am. Compl. ¶¶ 7-17.) Mulvania contends that she can challenge the white underwear policy because when she arrived at the jail she was wearing "an undergarment that was not of a solid white color" and was required to remove it. (Third Am. Compl. ¶ 11.)

On May 21, 2012, Mulvania filed an Amended Motion for Class Certification on behalf of all Plaintiffs. (*See* Am. Mot. for Class Certification (the "Amended Motion," hereafter cited as "Am. Mot."), ECF No. 47.) In the Amended Motion, Mulvania again seeks to challenge the Rock Island County Jail policy of requiring incoming female detainees to remove non-white underwear and underwire bras. (*see* Mem. of Law in Supp. of Am. Mot. for Class Certification ("Amended Memorandum," hereafter cited as "Am. Mem. for Class Certification") 1-2, ECF No. 48.) She has, however, again modified her definition of the proposed class. Now, the class is defined as including "[a]ny female detainee who entered the Rock Island County Jail after November 14, 2008, who was required to change into a jumpsuit, and who was not permitted to wear her underwear." (Am. Mot. 1.) The Amended Motion further asserts that "each plaintiff was required to remove her non-white underwear; each plaintiff remained in the Jail in a jumpsuit without underwear." (Am. Mot. ¶ 6.)

II. **ANALYSIS**

Mulvania's class definition has been a moving target. She initially sought class status on behalf of allegedly unlawfully detained individuals and individuals that were strip-searched, but she eventually dropped these requests in favor of what she labeled a "digni ty class." Yet even Mulvania's position regarding her purported "dignity class" has varied. Initially, she claimed

5

that such a class would include any woman who was "not wearing pure white underwear, was required to remove her undergarments and wear a jumpsuit without underwear." (Mot. for Class Certification 1-2.) In the Amended Motion, however, Mulvania modified the "dignity class" definition to include any woman "who was required to change into a jumpsuit, and who was not permitted to wear her underwear." (Am. Mot. 1.) While the differences between the proposed definitions are subtle, the Court will limit its review based on Mulvania's most recent definition for the proposed "dignity class."

Motions for class certification are governed by Federal Rule of Civil Procedure 23. The Court may certify a class when the plaintiff has demonstrated that the proposed class satisfies the four requirements of Rule 23(a) and at least one condition of Rule 23(b). Fed. R. Civ. P. 23; *Oshana v. Coca-Cola Company*, 472 F.3d 506, 513 (7th Cir. 2006). Specifically, Rule 23(a) states that the putative class must fulfill the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Court is free to make "whatever factual and legal inquiries are necessary under Rule 23" when evaluating a motion for class certification. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Ultimately, the plaintiff has the burden of affirmatively demonstrating that the requirements of Rule 23 have been met and the class should be certified. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). In attempting to carry this burden, "actual, not perceived, conformance with Rule 23(a)" is "indispensable." *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

A. **Adequacy of Representation**

The Amended Memorandum argues that "*Plaintiff is* represented by competent counsel and *she* will 'fairly and adequately protect the interests of the class,' as required by Rule 23(a)(4)." (Am. Mot. 12 (emphasis added), ECF No. 48.) The Court presumes that the individual referred to as the representative plaintiff in the Amended Motion is Mulvania since the motion does not identify any other specific individual to serve as the representative plaintiff and because Mulvania was the only named Plaintiff at the deadline for filing a motion for class certification. Thus, while Plaintiff's Third Amended Complaint names additional class members, it appears that the intention remains for Mulvania to serve as the representative plaintiff on behalf of the proposed class. Accordingly, the Court begins by analyzing whether Mulvania is a suitable class representative.

It is well recognized that "the most important part of [a class action] order is the place where it defines the class. This is a vital step. Both the scope of the litigation and the ultimate *res judicata* effect of the final judgment depend on the class definition." *Spano*, 633 F.3d at 583-84. Here, the proposed class has been defined as including every individual "who was not allowed to wear her underwear." This definition implies that each of the proposed class members were, at the time they were processed by the Rock Island County jail, actually wearing underwear and forced to remove it.

It is readily apparent that Mulvania cannot adequately represent the proposed class. The adequacy of representation requirement means that the proposed class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-626 (1997) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists*

7

*Comm. to Stop the War,* 418 U.S. 208, 216 (1974))). Despite Mulvania's attempt to characterize the clothing she was wearing at the time of her arrest as an "undergarment," the facts demonstrate she was not wearing underwear when she arrived at the jail. Indeed, Defendants aptly recognize that Mulvania never mentions the deprivation of underwear anywhere in her first three Complaints. (Defs.' Mem. 3.) Rather, instead of underwear, Mulvania admits that she was wearing a "sleep pant thing" that went down to her knees and a t-shirt that she was required to remove when she was processed at the Jail.[2] (Pls.' Mem. 5; Pls.' Ex. 8 at 6.) In light of Mulvania's admission that she was wearing knee-length sleep pants, she cannot reasonably claim to be a member of a class that was "not permitted to wear her underwear" as she was not wearing underwear when she arrived at the jail in the first place.[3] Thus, the Amended Motion fails the adequacy of representation requirement of Rule 23. *See, e.g.*, *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993) ("because [representative plaintiff] was not a member of the class she describes, the district court properly denied her motion for class certification").

### B. Typicality and Commonality

"Typicality" means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When assessing the typicality of a proposed class, the Supreme Court has long noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457, U.S. 147, 157 n.13 (1982). Generally, this requires that there is "enough congruence between the

---

[2] In an interview with police, Mulvania described her clothing as, "shorts and a, uh, or like those sleep pant things, you know . . . they go down to like here to my knees, and a t-shirt." (Pls.' Ex. 8 at 6.)
[3] Defendants also rely on an affidavit from Michelle Haun ("Haun"), Mulvania's booking officer. (Pls.' Ex. 8 at 6; Defs.' Ex. 2.) Haun's affidavit states that Mulvania was not wearing any underwear when she arrived at the jail. (Defs.' Ex. 2 ¶ 12.)

8

named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586.

As discussed in the foregoing section, Plaintiff Mulvania is not an adequate representative of the class. Her alleged "dignity" claim would require her to prove that the Jail's refusal to allow her to wear knee-length "sleep-pants" under the Jail-issued orange jumpsuit is materially distinct from the claim of the proposed class that they were not allowed to wear "underwear" under the jumpsuit. Thus, Mulvania's presence as a named Plaintiff weighs against a finding that the typicality and commonality requirements have been met for the proposed class.

Even if the Court were to consider the other named co-Plaintiffs as potential class representatives, there is significant variation in the facts underlying their claims that further demonstrates the lack of commonality and typicality amongst the proposed class members. First, named co-plaintiff Komanique Shuron Johnson ("Johnson") submitted a declaration with the Third Amended Complaint regarding her arrest on February 4, 2011. The declaration explicitly states that she "was not wearing any underwear when [she] was arrested."[4] (Decl. of Komanique Shuron Johnson, Pls.' Mem. in Supp. of Mot. for Class Certification, Ex. 2 at 6, ECF No. 19.) Under these circumstances, the facts underlying Johnson's claim cannot be that she was not permitted to wear her underwear. Rather, Johnson's claim would require a determination as to

---

[4] The Court acknowledges that the Amended Memorandum asserts that the allegations about Johnson were "in error." (Am. Mem. for Class Certification 3, n.2.) However, instead of conceding that Johnson is an improperly named co-plaintiff and seeking to dismiss her from the Third Amended Complaint, the Amended Memorandum asserts that Ms. Johnson "was also processed into the jail on September 21, 2009, November 20, 2009, March 17, 2010, [and] January 23, 2010" and that Plaintiffs' counsel "understand[s] that Ms. Johnson was required to remove non-white underwear on one or more of those dates." (*Id.*) This assertion by Plaintiffs' counsel is insufficient to carry the movant's burden of demonstrating Johnson's inclusion within the proposed class without a supporting declaration from Johnson. Moreover, the Court does not excuse Plaintiffs' need to provide evidentiary support for its Amended Motion on the basis that the failure to provide declarations from certain co-plaintiffs was "not a tactical omission but is the result of a clerical oversight on the part of plaintiff's counsel." (Am. Mem. for Class Certification 3, n.3.)

whether it is unconstitutional for the Jail to require individuals to wear an orange jumpsuit without underwear when they were not wearing any underwear when they entered the Jail. This claim is not typical or common to the claim of the defined class that challenges the requirement to remove their non-white underwear.

Similarly, the Court does not find that co-Plaintiff Hope Leanne Goldsberry ("Goldsberry") has a claim that is typical or common to that of the proposed class. The Third Amended Complaint alleges that as part of Goldsberry's arrest on March 7, 2011, she was told that "she must remove her underwear unless it was all white" and that she "complied with this directive, removed her colored underwear, and remained at the Jail in a jumpsuit without underwear." (Third Am. Compl. ¶¶ 31-32.) There is no declaration from Goldsberry to support these assertions. Conversely, the Defendants have submitted a declaration from Officer Jodi Barton, who helped process Goldsberry at the Jail on March 7, 2011. (Barton Decl., Ex. 4, ECF No. 55.) Barton's declaration states that Goldsberry was eight months pregnant on March 7, 2011, and that Barton would not have require Goldsberry to remove her underwear despite the Jail's typical policy. (*Id.*) "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Thus, on the evidence presently before the Court, Goldsberry has not even demonstrated that she has a viable claim of being required to wear an orange jumpsuit without underwear, let alone that she meets the typicality and commonality of being an individual "who was not permitted to wear her underwear."

Finally, Plaintiffs have not carried their burden of demonstrating that the claims of named co-Plaintiffs Carissa Bailey ("Bailey") or Jennifer Jill Shelby ("Shelby") are typical and common to the proposed class. Under Rule 23, the "similarity of claims and situations must be demonstrated rather than assumed." *Szabo*, 249 F.3d at 677 (citing *Falcon*, 457 U.S. at 160). Plaintiffs' counsel has provided no evidence regarding Bailey or Shelby in connection with the Amended Motion. Plaintiffs' counsel contends that the failure to provide declarations from Bailey or Shelby "is not a tactical omission but is the result of a clerical oversight on the part of plaintiff's counsel." (Am. Mem. for Class Certification 3, n.3.) However, to the extent that the moving party has the burden of demonstrating that Bailey and/or Shelby satisfy the requirements of Rule 23, the failure to provide evidence from them undermines the Amended Motion.

Plaintiffs had nearly seven months from the date they filed the motion for leave to add Bailey and Shelby as named co-Plaintiffs until they filed the Amended Motion. It is hard to conceive how they could not have obtained declarations from them to support the allegations in the Third Amended Complaint during that time. This is especially true considering that they were specifically added as additional co-Plaintiffs "to meet defendants' objections to class certification" (*See* Mot. for Leave to File Third Am. Compl. ¶ 3, ECF No. 39), which included challenges to the typicality and commonality requirements of Rule 23. Consequently, the Court concludes that Plaintiff's allegations regarding co-plaintiffs Bailey and Shelby are insufficient to demonstrate that they meet the typicality and commonality requirement for class certification.

In sum, the Amended Motion fails to demonstrate that five of the eleven co-Plaintiffs of the Third Amended Complaint have claims that are common and typical of the proposed class. In light of the various proposed class definitions and shifting identification of potential class members, the Court finds that the failure or inability to provide evidentiary support for the

typicality and commonality of nearly half of the named co-Plaintiffs is strong proof that the motion for certification should be denied for failure to satisfy this requirement of Rule 23(a).

    **C. Numerosity**

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." The Amended Motion says little about the impracticality of the joinder of all of the potential class members, relying instead on an estimate of approximately 41 potential class members. The failure to address the impracticality of joinder would alone likely be sufficient to find that the motion does satisfy Rule 23's numerosity requirement. *See Pruitt v. City of Chicago, Ill.*, 472 F.3d 925 (7th Cir. 2006) (affirming denial motion for class certification because there was no showing by the moving party that joinder as plaintiffs of 40 possible class members would not be practicable).

The Court also finds flaws with the assumptions underlying the calculations in the Amended Motion that weigh against a finding of numerosity. According to the Amended Motion, the estimated number of potential class members was achieved by obtaining the "Public Arrest Report" for the 3,700 people arrested by the City of Rock Island in the two year time period from May 1, 2009, through April 30, 2011. (Am. Mem. 9-10.) While Plaintiffs' possess two years' worth of information, the Amended Motion arbitrarily focuses only on the seven month period from October 1, 2010, to April 30, 2011. (*Id.*) This time period included the arrest of 240 women, who were sent letters regarding the present suit. However, the Amended Motion does not explain or provide any example of the content of the letters sent to these 240 individuals. Nevertheless, Plaintiffs claim that 40 letters were returned as undeliverable and that they received "sworn declarations from eight of the 200 women who presumably received counsel's letter." Plaintiffs then contend that if there are "9 class members (the eight declarants

plus the [sic] Joan Mulvania, the original plaintiff), in each 7 months of the class period (October 1, 2010 to April 30, 2011), then there will be 41 class members in the 32 months that elapsed from November 15, 2008 to July 15, 2011." The November 15, 2008, date was chosen by Plaintiffs based on the two-year statute of limitations period from the date that Mulvania filed her original Complaint. (Am. Mem. 10, n.5.) Plaintiffs do not explain the choice of July 15, 2011, as the cut-off date, but presumably that is an estimate based on the deadline set for the filing of a motion for class certification, which was initially set for July 1, 2011, but then extended to July 22, 2011.

      The Court finds several flaws with Plaintiffs' estimate. First, the "dignity" claim was not alleged until the Third Amended Complaint, which was filed on April 24, 2012. Plaintiffs' numerosity calculation, however, wrongly assumes that the two-year statute of limitations on this claim should be based on Mulvania's original Complaint, filed almost two years earlier. But the original Complaint, like the later First and Second Amended Complaints, make no mention of the "dignity" claim being pressed by Plaintiffs. Nor has any argument regarding tolling been made in Plaintiff's motion. Consequently, the Court finds that the appropriate time period for estimating the number of potential class members is the 25 month period from April 24, 2010, the two-year statute of limitations period for the Third Amended Complaint, and May 7, 2012, the date the Amended Motion was filed.

      Plaintiffs have also erred regarding the number of individuals in the potential class. Plaintiffs contend that they have already identified nine individuals that fall into the proposed class and include Plaintiff Mulvania in this number. (*See* Am. Mem. 10.) As noted in the discussion regarding adequacy of representation, Mulvania does not fall within the proposed

13

class. Thus, Plaintiffs have overinflated the number of identified individuals that meet the class definition within their selected seven-month time frame by at least one individual.

The Court also is not persuaded by Plaintiffs' assumption that their estimated number of potential class members is conservatively low. In this regard, Plaintiffs contend that there are going to be "far more" individuals in the proposed class than those that they have already identified. (*Id.*) Underlying this assumption is the presumed existence of individuals who fall within the proposed class that have yet to respond to Plaintiffs' solicitation. Yet, in the nearly six-months between the filing of Plaintiffs' Motion for Leave to File the Third Amended Complaint and the Filing of Plaintiffs' Amended Motion, only two individuals have been identified as potential class members. As Plaintiffs' initial solicitation yielded only six individuals meeting the class definition and only another two individuals identified in the last several months, the Court does not find that additional time would necessarily identify more individuals as it is apparent that the number of identified individuals has decreased over time.

It is also apparent that Plaintiffs have been in contact with numerous additional individuals who were arrested and do not meet the class definition. Plaintiffs contend only that they have submitted sworn declarations from eight of the 200 women who presumably received their solicitation letter. (Am. Mem. 10.) Plaintiffs do not state how many total responses they have received in response to their solicitation. Yet the record demonstrates that they have received declarations from at least Plaintiff Johnson, Ms. Chastity Lee McClure, and Ms. Patricia Mary Berry, who each admitted that they were not wearing any underwear when they were arrested and, accordingly, do not fall within the proposed class. (*See* Mem. of Law in Supp. of Mot. for Class Certification 1, Ex. 2, ECF No. 19.) These individuals have been dropped from the lawsuit or selectively culled from Plaintiffs' numerosity arguments, but the fact that they

have responded to Plaintiffs' solicitation weakens the argument that there are a large number of unidentified class members. Rather, it may simply be that the lack of responses to Plaintiffs' solicitation letter was a result of there being numerous individuals that, like Johnson, McClure, and Berry, do not fall within the scope of the defined class. In light of the fact that Plaintiffs have not stated how many responses they've received to the solicitation letter and how many of those responses were by individuals that did not fall within the proposed class, the Court does not find it appropriate to arbitrarily inflate Plaintiffs' estimate of the potential number of class members.

The calculation in the Amended Motion overestimates the number of potential class members and, therefore, is not a "reasonable estimate." The calculation relies on nine class members over a seven-month span and extrapolates those numbers over a 32-month period. Applying Plaintiffs' methodology but using the eight class members that are actually part of the proposed class and the proper 25-month window yields an estimated number of class members of approximately 29 individuals. This falls short of the general rule that a class of 40 is sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See George v. Kraft Foods Global*, 270 F.R.D. 355, 365 (N.D. Ill. 2010).

### D. Predominance of Class Issues

The Amended Motion seeks class certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is far more demanding." *Boundas v.*

*Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 416 (N.D. Ill. 2012) (quotations omitted). Determining whether common questions of law or fact are predominant requires an analysis of the allegations in light of the underlying cause of action. *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012).

Here, the Court finds that there are inherent dissimilarities between the circumstances of each of the named co-Plaintiffs that weigh against class certification. Specifically, Plaintiffs' Third Amended Complaint seeks damages "in favor of each plaintiff and the plaintiff class in a total amount in excess of one million dollars." (Third Am. Compl. 13.) However, neither the Third Amended Complaint nor the Amended Motion explain how these damages are to be distributed between the proposed class members. Assuming that Plaintiffs can prove a constitutional violation by Defendants, the Court can foresee several issues left unaddressed by the Amended Motion that would likely require individual assessments of each class member's damages. For example, the duration that the class member was required to go without underwear, whether the class member had an opportunity to obtain white underwear but did not do so, and whether the individual had extenuating circumstances such as being on her menstrual cycle or pregnant would each be factors implicated in a determination of a class member's damages. *See Klein v. DuPage County*, 119 F.R.D. 29, 32 (N.D. Ill. 1988) ("Whether inmates suffer 'shock, panic, depression, shame, rage, humiliation [or] nightmares' as a result of [the allegedly unconstitutional] searches will have a bearing on their damage awards. . . . Such intimate, individual, and fact specific determinations do not lend themselves to consideration in the context of a class action suit."). In short, there would be no simple or formulaic method to calculate these damages across all of the individuals of the proposed class. *See Reed v. Advocate Health Care*, 268 F.R.D. 573, 595 (N.D. Ill. 2009) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339

F.3d 294, 307 (5th Cir. 2003) ("Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation"). Thus, the Court finds that Plaintiffs have failed to demonstrate that common questions of law or fact predominate over questions affecting only individual members and that the class action is the best method for fairly and efficiently adjudicating this controversy.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby DENIES Plaintiff's original and Amended Motions to Certify Class.

Entered this 15th day of August, 2012.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE